**MacFADDEN–BARTELL CORP.,**
**Plaintiff,**

v.

**LOCAL 1034, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, et al., Defendants.**

**No. 72 Civ. 1837.**

United States District Court,
S. D. New York.

May 16, 1972.

Graubard, Moskovitz, McGoldrick, Dannett & Horowitz, New York City, for plaintiff; Philip Kazon, Robert I. Gosseen, New York City, of counsel.

Richard A. Weinmann, New York City, for defendants.

LASKER, District Judge.

MacFadden-Bartell Corp. ("Bartell") is engaged in the business of publication and distribution of magazines throughout the United States. Local 1034 is a labor organization representing the so-called "cage" employees of Bartell. Bartell moves for a preliminary injunction to terminate picketing of its premises by members of Local 1034, alleged work stoppages, and other claimed interference with its business operations.

### I.

On March 1, 1971, Bartell and Local 1034 entered into a collective bargaining agreement which contains the following arbitration clause:

"Should any dispute or difference between the Employer and the Union arise out of or under this agreement, it shall be discussed between the Employer or its representative and an authorized representative of the Union in an effort to adjust the same. In the event that within two weeks, or such other time as the parties agree, no settlement can be reached, the matter may be submitted to arbitration by an arbitrator designated by the New York State Board of Mediation (the 'Mediation Board'). Any such dispute shall be submitted to arbitration by the Union not later than six months after the Union shall acquire knowledge thereof. The parties hereby confer jurisdiction on the Mediation Board for that purpose, and do further confer jurisdiction to the courts of the State of New York and further agree that the arbitration and all proceedings in connection therewith shall be in accordance with the arbitration laws of the State of New York. All notices required to institute, proceed with and conduct the arbitration or any proceedings to enforce the award of the arbitrator may be served personally within or without the State of New York, or by certified mail to the last known address, and shall have the same effect as if service was made personally within the State of New York. The decision of the arbitrator shall be final and binding on the parties and enforceable in any court of competent jurisdiction. It is agreed that legal as well as equitable consideration may be entertained by the arbitrator."

The collective bargaining agreement also contains a "management rights" provision which reads:

"Except as expressly limited by the provisions of this agreement, the Employer reserves and retains exclusively all of its common law rights to manage its business. The exclusive rights of management shall include its right to determine the number, location, relocation and types of its operations, and the methods and processes to be employed; to discontinue processes or operations due to economic conditions; to establish and change work schedules and assignments; and otherwise to take such measures as management may determine to be necessary for the orderly, efficient and profitable operation of its business."

Bartell insists that the terms of the management rights provision authorize it to discontinue any portion of its operations without consulting the Union. The Union vigorously contests the proposition.

The dispute arises from Bartell's discontinuance on May 3, 1972 of its "caging" operations. For a number of years Bartell has performed such operations for Downe Publishing, Inc. (Downe"). The Downe account comprised approximately 75% of Bartell's volume in its caging operations. Upon the demise of Look magazine, Downe acquired Look's computer and subscription processing system. It then advised Bartell that commencing May 1, 1972, it would do its own caging work. As a result, Bartell decided to abandon its operations and subcontract them to Downe, since it appeared certain that Bartell's caging operations could only be conducted at a loss if it no longer had Downe's business. Other savings appeared possible by transferring to the Downe plant, such as a reduction in "cash processing time," and the Downe plant had other advantages such as document microfilming capability and superior retrieval arrangements.

On April 19th, Bartell's treasurer, A. C. Clapp, Jr., advised Alan Adelstein, a business agent for Local 1034, that the plaintiff contemplated transferring its Cage Department to Iowa. Adelstein contended that the company was doing this solely to discourage Local 1034's further organizing efforts at Bartell and that, in any event, it violated Section 31 of the collective bargaining agreement, which provided in pertinent part that "[a]ll of the work of the categories covered by this agreement shall be performed only by regular employees (members of the bargaining unit as herein provided) in accordance with the wage rates, terms and conditions herein set forth."

On or about April 20th, Local 1034 formally submitted the dispute to the New York State Board of Mediation for arbitration.

On April 28th, Albert S. Traina ("Traina"), Bartell's president, met with Bernard and Martin Adelstein, the controlling officers of Local 1034, and informed them that Bartell intended to discontinue its caging operations and remove them to the Downe plant. On May 2nd Traina and Bernard Adelstein reviewed the situation. Since it appeared that the employees affected were not eligible for severance pay under the plan provided for by the collective bargaining agreement, Traina agreed that the company would voluntarily provide two weeks' severance pay for persons employed more than one year and one week's pay for employees of less than a year. The matter remained unresolved.

On May 3d, Clapp wrote a memorandum to all cage employees informing them that effective that day they were to be furloughed because the operation was being relocated at Downe. The department has remained closed since then.

On May 4th, a picket line was established around the Bartell plant. Approximately 21 pickets carried two signs stating, "Cage Workers MacFadden-Bartel Corp. locked out unfair runaway shop."

In its papers in support of this motion and for a temporary restraining order plaintiff complained that a strike and work stoppage existed at the plant. Answering affidavits denied the existence of a strike or work stoppage, asserting that every employee whom Bartell had ordered to work was working. It is now undisputed that this is the fact. Nevertheless, Bartell asserts (affidavit of Peter J. Callahan sworn to May 10, 1972) that as a result of the picketing a large number of truck deliveries have been stopped. However, it is far from clear whether the trucks' failure to cross the picket line has been caused by affirmative action of the pickets or by voluntary decision of the truck drivers who do not choose to drive through a picket

line. It is certain that, whatever the cause, the failure of deliveries is imposing severe and definite inconvenience and damage to Bartell, which relies on truck delivery for a variety of information affecting its operations and cash flow. The details of the damage allegedly caused by failure of truck deliveries are described in Callahan's affidavit.

On May 3d, Local 1034 filed an unfair labor practice charge against Bartell with the National Labor Relations Board, claiming a lock-out in violation of the Act and refusal to bargain collectively with the Union as representative of the furloughed employees.

On May 4th, Bartell applied for a temporary restraining order, which was granted ex parte. However, on submission of answering affidavits which demonstrated that all employees ordered to work were working, and assurances from Bernard Adelstein, president of Local 1034, that he exercised control of the picketing members of the Union, the restraining order was modified to require that he order members to picket peacefully, in limited numbers, and not to interfere with deliveries.

## II.

Bartell argues that an injunction should be issued against all picketing on the grounds that the picketing violates the arbitration clause, that picketing is inflicting irreparable injury on Bartell while its cessation will not damage the Union, and that Local 1034's filing of an unfair labor practice charge does not deprive the court of jurisdiction to act. Local 1034 contends that (a) no injunction should be granted since enjoining the picketing (which it claims is peaceful only) would inflict substantial injury on the Union and its members, and (b) by the filing of its unfair labor practice charge against the employer the National Labor Relations Board has preemptive jurisdiction.

▮ In Boys Markets v. Retail Clerk's Union, 398 U.S. 235, 90 S.Ct. 1583, 26 L.Ed.2d 199 (1970), the Supreme Court held that federal courts have jurisdiction to enjoin strikes in breach of no-strike obligations when the collective bargaining agreement provides for binding arbitration of disputes. This is such a case. The Union's argument that, since the contract does not specifically contain a no-strike clause and the arbitration provision of the contract, states that in the event " . . . no settlement can be reached, the matter *may* be submitted to arbitration . . ." (emphasis added), it is not contractually bound to arbitrate (although it has already sought arbitration) is unpersuasive. It is clear from the context of the arbitration clause that the word "may" is intended to provide that either party has the option to submit the issue to arbitration, and not that the opposing party has its choice to refuse. The absence of a no-strike clause is not significant since, under Local 174, Teamsters, Chauffeurs, etc. v. Lucas Flour Co., 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962), where the parties have contracted to arbitrate disputes a no-strike provision is an implied term of the agreement.

▮ Accordingly, we find that, under *Boys Markets*, the court has jurisdiction to grant an injunction. Nevertheless, it must be determined whether the "issuance of an injunction would be warranted under ordinary principles of equity . . ." (*Boys Markets*, 398 U.S. at 254, 90 S.Ct. at 1594). The threshold question is whether Local 1034 has breached the contract. We find that it has not. There is no strike or work stoppage. Although Local 1034 argues that it is not obligated to arbitrate, it has submitted the matter to arbitration and both parties have agreed on the record that they are ready to proceed further. It would be expanding the *Lucas Flour* doctrine excessively to hold that, because the parties are obligated to arbitrate, the contract not only contains an implied no-strike obligation, but forecloses the employees who were laid off without no-

tice (when the employer had already been formally notified that the matter was *sub judice* before an arbitrator) from exercising their constitutional right of peaceful picketing.

We recognize that the employer may suffer hardship by failure of truck deliveries pending the arbitrator's decision. But it was the employer who created a fait accompli on May 3d by discontinuing its caging operations, although it was already on notice that the Union disputed its right to do so and had submitted the matter for determination in accordance with the contract.

Bartell's reliance on Favino Mechanical Construction, Ltd. v. Local Union 269, 78 LRRM 2389 (S.D.N.Y.1971), is misplaced. In that case there was no question that a strike existed, that the union refused to arbitrate the dispute, and that the employer had committed no acts claimed to be in violation of the agreement. Here the Union is not striking, has agreed to arbitrate, and the employer has committed acts which the Union contends violate the contract.

Accordingly, the motion for a preliminary injunction is denied. This disposition of the case makes it unnecessary to determine the validity of Local 1034's claim that the matter is preempted by the National Labor Relations Board.

Our determination to deny an injunction rests on the assumption that the responsible Union officers will effectively maintain in force orders that their members are to picket peacefully, in limited numbers, and are to take no steps actively or by ruse to interfere with deliveries to Bartell's plant.

The foregoing constitutes the court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

The motion for a preliminary injunction is denied.

It is so ordered.